## HOPKINS v. NEWMAN.

PATENTS; INTERFERENCE; SPECIFICATIONS.

1. The contention by one of the parties to an interference involving an invention of the combination of a well-known and patented adding machine with a typewriter, that his opponent had no right to make the claims of the issue, on the ground that his specifications did not disclose certain elements of the adding machine, is untenable, where it appears that, while one unskilled in the art and relying alone on such specifications and accompanying drawings could not have made the adding machine referred to therein, one so skilled could readily have constructed it, and, having constructed it, could then have constructed the typewriting machine and connections, from the specifications and drawings, and so produce the combination of the issue.

2. The specification of a patent is addressed to persons skilled in the art, and a disclosure therein which is sufficient to enable such persons to make and use the same constitutes a compliance with sec. 4888, U. S. Rev. Stat. (U. S. Comp. Stat. 1901, p. 3383). (Following *Kilbourn v. Hirner*, 29 App. D. C. 54.)

No. 443.  Patent Appeals.  Submitted January 17, 1908. Decided February 11, 1908.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.        *Affirmed.*

The facts are stated in the opinion.

*Mr. Thomas A. Banning* and *Mr. John D. Rippey* for the appellant.

*Mr. Samuel E. Hibben* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

This is an interference proceeding, the issue of which is contained in thirteen counts, as follows:

"1. In an adding machine, a platen, type-carriers, type mounted in frames on the carriers, devices for operating the carriers adjacent to the platen, hammers for driving the type against the platen to print numbers, and mechanism operable to accumulate the numbers so printed, in combination with mechanism operable to print any desired words on the platen in alignment with the printed numbers.

"2. In an adding and writing machine, a platen, mechanism operable to print any desired words thereon, type-carriers movable adjacent to the platen, movable type carried by said carriers, hammers for driving the type against the platen to print in alignment with the words, and devices operable to rotate the platen when the type-carriers operate.

"3. In an adding and writing machine, a platen, typewwriting mechanism operable to print any desired words thereon, devices carrying movable type for printing numbers, means for moving said devices adjacent to the said platen, hammers mounted in position to drive the type against the platen, and means for striking the hammers against the type when the type has been positioned for printing.

"4. In an adding and writing machine, a platen, movable devices carrying type, and hammers for driving the type to record on the said platen, in combination with type bars, and keys for operating them to print on the platen aforesaid.

"5. The combination of the platen, typewriting mechanism operable to print any desired words thereon, devices independent of the typewriting mechanism movable adjacent to the said platen, type carried by said devices, and hammers for driving the type against the platen aforesaid.

"6. In an adding and writing machine, word-printing mechanism having a platen, type-carriers separate from the word-printing mechanism, and hammers for driving the type in the carriers to print on the platen aforesaid.

"7. In an adding and writing machine, word-printing mechanism having a platen, type-carriers separate from the word-printing mechanism, type in said carriers, hammers for driving the type to print on the platen aforesaid, and devices for drawing the hammers away from the type after operation.

"8. In an adding and writing machine, word-printing mechanism having a platen, type-carriers separate from the word-printing mechanism, devices for operating the type-carriers, hammers for driving the type to print numbers on the platen aforesaid, and totalizing mechanism operable to totalize the numbers so printed.

"9. In an adding and writing machine, the combination with the word-printing mechanism having a platen arranged to carry paper, of devices carrying type independent of the word-printing mechanism, means for moving said devices toward the platen as required for printing numbers thereon, means for printing the number by use of the type after said devices have been so moved, and a totalizer operable to add the numbers as printed.

"10. In an adding and writing machine, the combination with the word-printing mechanism having a platen arranged to carry paper, of devices carrying type independent of the word-printing mechanism, means for moving said devices to. printing position adjacent to the platen as required for printing numbers, means for recording after said devices stop ad-

jacent to the platen, a totalizer, and means for operating the same after each number has been recorded.

"11. The combination with word-printing mechanism having a platen arranged to carry paper, of type-carriers separate from the word-printing mechanism, a series of relatively movable types carried by each type-carrier, means for moving the type-carriers toward the platen, stops to limit movement of the type-carriers, and hammers for driving the type to print.

"12. The combination with word-printing mechanism having a platen arranged to carry paper, of devices carrying type independent of the word-printing mechanism, means for aligning any desired type carried by the said devices adjacent to the platen aforesaid, means for driving the type so aligned against the said platen to print, and automatic means for rotating the platen after the type has been driven to print.

"13. In a machine of the character described, word-printing mechanism having a platen arranged to carry paper, adding mechanism, type-carriers separate from the word-printing mechanism, a series of relatively movable type carried by each of said type-carriers, means for aligning any desired type on the type-carriers adjacent to the platen aforesaid, means for driving the type so aligned against the said platen to print numbers, and means for operating the adding mechanism to add the numbers so printed."

Typewriting and adding machines had long been in separate use before the conception of the invention of the issue, which consists in combining the two without introducing any novel elements into either. The old elements of the adding machine operate in the combined machine in the same way and perform the same functions as when operated separately. The adding machine used by Enos S. Newman [the appellee] is described as the "Registering Accountant" that had been invented, patented, and put into general commercial use by Burroughs. It is of the class that prints the numbers added together, and also prints the total upon a sheet of paper carried upon a platen or roller similar to that used in the ordinary typewriters. The combination of the two machines is effected by arranging a sin-

gle platen or roller to co-operate with the printing mechanisms of both the typewriting and the adding machine. Newman's combination consists in placing the typewriting and the adding machine side by side, and providing suitable means for conducting the platen or roller from a position where it co-operates with the printing mechanism of the typewriting machine to a position where it co-operates with the printing mechanism of the adding machine. As described by Newman: "In the combined typewriting and adding machine, the same carriage or platen suffices for both machines, the carriage of the adding machine being removed when the typewriting machine is connected up or combined with it." He states that one of the objects of his invention is: "To provide typewriting mechanism and special means for combining such mechanism with such an adding machine, whereby, when the two machines are conjointly operated, the whole of a bill, statement, pay roll, etc., except the column of numbers to be added and the total thereof, will be printed by the typewriting mechanism, while the adding machine will perform in full the same work for which it is intended when it is to be operated independently."

In Hopkins's combination, the two mechanisms are not fused together as contended, but the typewriting mechanism is superimposed upon the adding mechanism. Notwithstanding the difference between the two structures in this respect, the purpose and result are substantially the same. In both, the two mechanisms operate independently of each other, and are brought into co-operative relationship by the platen or roller. Some of the claims of the issue specify that the type-carriers are separate from the word-printing mechanism. And Hopkins stated one of the objects of his mechanism to be "to produce an adding and writing machine, the two departments of which are conjointly or separately operable, for the purpose of printing either joint or independent records."

By means of the combination of the issue it is made possible to write and foot up a bill or statement of account by the mechanical operation of printing the several items of the same on the typewriting machine, and printing and adding the

figures upon the adding machine, with the co-operation of a single platen or roller.

Newman's application was filed February 7, 1901, and that of Hopkins January 24, 1903; and it appears that a former interference had been declared between them. The issue of that interference is defined in the three following counts:

"1. The combination with a typewriting mechanism, and an adding mechanism, of a paper carriage, a roller or platen thereon arranged to feed a sheet of paper to both mechanisms, and means for rotating the roller operated by a part of the adding mechanism.

"2. The combination with a typewriting mechanism, and an adding mechanism, of a paper carriage, a roller or platen thereon arranged to feed a sheet of paper to both mechanisms, and means for rotating the roller operated by a part of the adding mechanism or manually as desired.

"3. The combination with a typewriting mechanism, and an adding mechanism, of a paper carriage, a roller or platen thereon arranged to feed a sheet of paper to both mechanisms, manually operated mechanism for rotating the roller, and automatic means for rotating the roller at the end of each line of printing."

Hopkins failed to file the preliminary statement required, and a decision was rendered in favor of Newman. Thereafter the Primary Examiner rejected ten claims of Hopkins that were in his application at the time of the declaration of this first interference, and the three new claims added subsequently, on the ground that they were all readable on the structure disclosed in Newman's application, and therefore concluded by the former adjudication. This rejection was afterwards withdrawn, the claims allowed, and the present interference declared. Hopkins moved to dissolve this second interference on the two grounds that there was no interference in fact, and that Newman had no right to make the claims.

Newman also moved to dissolve on the grounds that Hopkins had no right to make the claims, and that the question of priority was *res judicata*. Both motions were denied by the Primary Examiner. Newman took no testimony as to date of

conception and reduction to practice, but relied on the filing date of his application therefor.

In a lengthy and well-considered decision, the Examiner of Interferences awarded priority to Newman  He held that Newman had the right to make the claims, was the first to conceive the invention, and also that the question of priority was settled by the former decision  The same conclusions were reached by the Examiners-in-Chief and the Commissioner in turn, and the decision in favor of Newman was affirmed.

The contention that Newman had no right to make the claims of the issue is founded on the fact that his application did not disclose certain elements of the adding machine recited in the counts thereof.  This was overruled by the Primary Examiner, and, as we have seen, by each tribunal of the Office.

It is true that the Newman application does not specifically describe certain elements of the adding machine that are recited in the claims of the issue.  His drawing and specifications show a typewriting and adding machine placed side by side, with suitable means for adapting a single platen to co-operate with the printing mechanism of each machine.  The printing mechanism of the typewriter is shown in the drawing and described, together with the mechanism for actuating and controlling the movement of the platen.  The drawing shows only the case and a few minor elements of the adding machine.  The application to which the drawing is attached contains, among others, the following statements:

"My invention relates to combined typewriting and adding machines, and has for its object to provide typewriting mechanism and improved means for combining the same with adding mechanism.

"In the present embodiment of my invention I have illustrated it in connection with an adding machine of the class known as 'Registering Accountants;' and a special object of the present invention is to provide means whereby typewriting mechanism may be combined with such an adding machine.

"As is well known to those skilled in the art, adding machines of the class mentioned are provided with key-boards, and in

their operation they print the several numbers to be added, as well as the sums of said numbers."

In the first action taken in the Office on Newman's application, he was requested by the Examiner in charge to state the name of the patentee of the adding machine which he had referred to as the "Registering Accountant." He responded with an amendment stating that the machine was one that had been patented to Burroughs, No. 504,963, on September 12, 1893. No further identification or description was called for. The Burroughs patent and machine, so designated, show the specific features of the adding machine specified in the claims of the issue.

The testimony shows that the Burroughs adding machine was on the market first in 1892, and continually until after Newman's application had been filed, and that the name "Registering Accountant" had been put in a prominent place on every machine. The words were also used on the stationery, letter heads, and in the pamphlets of the makers, which contain illustrations of the machine substantially the same as shown in Newman's drawings. Expert witnesses for Hopkins testified that they could not construct a machine embodying the issue of the interference from Newman's specifications and drawings alone, because the details of the adding machine were not therein shown. But one of these said, on cross-examination, that the keys and case shown in Newman's drawings resembled the Burroughs machine, that he knew of no other machine having the distinctive appearance of the Burroughs, and that he could recognize the Burroughs machine from a side view. Another said that the Burroughs machine comprises accumulating mechanism, sector bars or type-carriers, movable type in such bars, and a series of hammers for driving the type. These are elements of the issue not specifically disclosed in Newman's application. A third said that all the elements which he had said were not specifically shown in Newman's application were embodied in the Burroughs machine as made in 1901 and several years before, and well known as the Burroughs "Registering Accountant." He also said the outline and certain details of

the Newman drawing had the appearancce of the Burroughs machine, and he knew of no other machine having those distinctive outlines. Further, he said, that from the drawings and descriptions of Newman he could construct a typewriter and paper carriage which might be attached to a Burroughs machine, though he could not therefrom construct the adding machine. He was then asked: "But you could construct the typewriter and paper carriage in such manner as to use the same in connection with a regular Burrough's machine, used bodily, with the paper support, of course, unmoved?" To which he answered "Yes." Now, while one unskilled in the art, and relying alone on the drawings and specification of Newman, could not have made the adding machine referred to therein, it is perfectly plain that one so skilled could readily have constructed it; and, having constructed it, could then construct the typewriting machine and connections, from Newman's drawings and specification, and produce the combination of the issue. Newman did not undertake to make any change in or improvement upon the adding mechanism of the well-known "Registering Accountant," patented, manufactured, and sold by Burroughs, which he described as a part of his combination. His invention began with it, and consisted in combining therewith the typewriting machine, and making the specified change in the carriage whereby a single platen is made to co-operate with the separate printing mechanisms of the two machines in combination. The specification and drawings describing the "Registering Accountant" as the adding machine of the combination, the want of specification of its elements and their functions was supplied and rendered certain by the reference. What was new he described with sufficient detail, and it was not essential to describe that which was old and well known. As was aptly said by the Commissioner: "The specification of a patent is addressed to persons skilled in the art, and a disclosure therein which is sufficient to enable such persons to make and use the same constitutes a compliance with the requirements of sec. 4888 of the Revised Statutes (U. S. Comp. Stat. 1901, p. 3383)." The doctrine is well established. *Kilbourn*

v. *Hirner,* 29 App. D. C. 54, 60; *Webster Loom Co.* v. *Higgins,* 105 U. S. 580, 586, 26 L. ed. 1177, 1179; *Carnegie Steel Co.* v. *Cambria Iron Co.* 185 U. S. 403, 437, 46 L. ed. 968, 986, 22 Sup. Ct. Rep. 698.

The tribunals of the Patent Office also concurred in holding that Hopkins's evidence was insufficient to show a conception of the invention earlier than the date on which Newman's application had been filed; and we see no reason to doubt the correctness of their conclusion. As Newman was entitled to make the claims of the issue under the description in his application, and was the first to conceive the invention disclosed, *it follows that he is entitled to the award of priority.*

This rendered it unnecessary to consume time with the discussion of the effect of the former adjudication in his favor upon the issue as disclosed in the first interference.

For the reasons given, we are of the opinion that the decision awarding priority of invention to Newman was right, and it will therefore be affirmed, and this decision certified to the Commissioner of Patents as the law requires.        *Affirmed.*